**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **CASE NUMBER: 3:25-CR-30006-001**

**BRIAN HUGHES**

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the Defendant, Brian Hughes, by undersigned counsel, and does hereby respectfully move this Court as to the following: a downward variance from the guidelines imprisonment range. Defense counsel anticipates that the length of time necessary for the sentencing hearing should not exceed one hour.

PROCEDURAL BACKGROUND

Mr. Hughes was arrested on July 17, 2025, based upon a four-count Indictment (filed July 22, 2025) charging him with one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e); one count of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (f); one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1); and one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). On November 3, 2025, Mr. Hughes appeared before the Honorable Timothy L. Brooks, Chief District Judge, for a change of plea hearing. On that date, he formally entered a plea of guilty to counts one and three of the Indictment. Mr. Hughes has been in custody since his arrest. The final presentence report was filed on February 5, 2026. Sentencing is scheduled for May 12, 2026.

1

## FACTS

In December 2024, Mr. Hughes (21 years old at the time) began communicating with a 15-year-old minor in Berryville, Arkansas, via Snapchat. Their relationship progressed over Snapchat to the point that their conversations became explicit and increasingly focused on the two meeting up to engage in sexual activities. At this time, Mr. Hughes was an active military member stationed at Fort Bragg, North Carolina. Eventually, on April 17, 2025, Mr. Hughes traveled from Fort Bragg to Arkansas. On April 18, 2025, Mr. Hughes rented a hotel room in Eureka Springs, Arkansas, and engaged in numerous sexual activities with the 15-year-old minor there. These activities were filmed, with some of the files later distributed by Mr. Hughes. On May 27, 2025, Mr. Hughes was confronted by military investigators at Fort Bragg regarding this incident—he gave a full, written confession.

During this same period of time (early 2025), Mr. Hughes was engaged in the trading and downloading of child pornography on Telegram. Mr. Hughes would end up possessing thousands of files of child pornography, which ran the gamut of the types of images and videos typically seen in other child pornography cases. Investigators opined that it appeared the average age of the minors depicted in these files was approximately nine to twelve years old.

## LAW AND ANALYSIS

Since 2005, the guidelines have been considered advisory and are now just one of several criteria a sentencing court considers when imposing a sentence. *United States v. Booker*, 543 U.S. 220, 223 (2005). The process a sentencing court must follow since *Booker* involves three steps: (a) determine the appropriate advisory sentencing range; (b) examine the propriety of a traditional departure under the guidelines; and, finally, (c) consider the factors set forth in 18 U.S.C. § 3553(a)

2

to determine whether to vary from the guidelines. *United States v. Garlewicz*, 493 F.3d 933, 937 (8th Cir. 2007).

### A.  Determination of Advisory Guideline Range and the Final Presentence Report

Mr. Hughes agrees that the advisory imprisonment range is 600 months based on a total offense level of 43 and a criminal history category of I.

### B.  Applicability of Traditional Departure

Mr. Hughes is not seeking a traditional departure.

### C.  Application of § 3553(a) Factors to Determine if a Variance is Warranted

18 U.S.C. § 3553(a) is entitled "Factors to be considered in imposing a sentence," and begins with the mandate that, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  In deciding on an appropriate sentence, the Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant.  It should also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.  In addition, the Court should consider whether the sentence would provide adequate deterrence and protect the public from further crimes of the defendant.  Along with a consideration of the advisory guideline range, the Court should also contemplate the need for the sentence imposed to provide the defendant with medical treatment, vocational training, education, or correctional treatment.  The Court should also address the need for the sentence imposed to avoid unwarranted sentencing disparities.  Considering the 3553(a) factors as applied to Mr. Hughes, a downward variance from the guidelines imprisonment range is sufficient but not greater than necessary to achieve the purposes of sentencing.

1. **Nature and Circumstances of the Offense**

In many ways, Mr. Hughes's overall criminal case is best analyzed as two independent offenses: (a) production of child pornography on April 18, 2025 and (b) the possession and distribution of unrelated child pornography through early 2025. By viewing the offenses separately, the Court should reach the conclusion that the production offense is less aggravating than most hands-on sexual offenses that this Court sentences, while the distribution conduct is more aggravating than most 2G2.2 offenses that this Court sentences. On one hand, Mr. Hughes traveled across the country to engage in sexual activity with someone 6 years his minor. The underlying sexual conduct that occurred in Eureka Springs on April 18 is punishable in the State of Arkansas by up to 6 years in prison. Ark. Code Ann. § 5-14-127(a)(1). Had Mr. Hughes not crossed state lines to commit this offense or memorialized the offense by videotaping it, it would be considered a low-level felony.

On the other hand, Mr. Hughes was not merely a possessor or passive distributor of child pornography. He took part in a community on Telegram that actively traded in child pornography. In doing so, he amassed a quantity of files typical for these types of cases. Nonetheless, the Court could rightly view the trading and community aspect of the 2G2.2 offense as more aggravating. On balance, Mr. Hughes's offenses taken together suggest that a downward variance is appropriate—as this Court is unfortunately aware, there are far more aggravating circumstances underlying the production of child pornography. A guidelines sentence of 600 months in this case would leave no space to distinguish between someone like Mr. Hughes, who engaged in sexual activity with a pubescent individual who was not in his custody or care, and a parent who repeatedly rapes their own pre-pubescent child and films it.

4

### 2. History and Characteristics of the Defendant; Medical Treatment, Vocational Training, Education

At 22 years old, with his brain not even fully developed,[1] Mr. Hughes must recalibrate his future. What was once a promising young adulthood as an active member of the military with some college background is now replaced with a lengthy federal prison sentence and the remainder of his life as a registered sex offender. As noted in the presentence report, he has no other criminal history. Mr. Hughes had a tumultuous childhood marred by his separation from biological parents, abuse, and estrangement from his adoptive father. Researchers have posited that those with insecure childhood attachments develop intimacy deficits, which in turn can lead to deviant sexual behavior.[2] Further, Mr. Hughes suffered from clinical depression. Despite those obstacles, Mr. Hughes was a young man with a high school diploma and a demonstrated work history on his way to serving our country as a member of the military. Mr. Hughes understands the consequences of his actions and that he deserves punishment for his conduct—admitting to crimes that put him at jeopardy of a 50-year sentence. However, the seriousness of this offense is mitigated by Mr. Hughes's lack of criminal history[3] and documented work ethic[4]. In the face of these factors suggesting a low likelihood of recidivism for Mr. Hughes, a downward variance would be sufficient.

---

[1] Nat'l Inst. of Mental Health, *The Teen Brain: 7 Things to Know* (2023), *available at* https://www.nimh.nih.gov/sites/default/files/documents/health/publications/the-teen-brain-7-things-to-know/teen-brain-7-things-to-know.pdf.

[2] Jill S. Levenson & Melissa D. Grady, *The Influence of Childhood Trauma on Sexual Violence and Sexual Deviance in Adulthood*, 22 Traumatology 94, 95 (2016), *available at* https://www.researchgate.net/publication/303826280_The_Influence_of_Childhood_Trauma_on_Sexual_Violence_and_Sexual_Deviance_in_Adulthood.

[3] *See generally* U.S. Sent'g Comm'n, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* 6 (2017) (finding a 30.2% rearrest rate for offenders with zero criminal history points).

[4] *See generally* Sarah Lageson & Christopher Uggen, *How Work Affects Crime—And Crime Affects Work—Over the Life Course*, *in Handbook of Life-Course Criminology: Emerging Trends and Directions for Future Research* 201, 202 (2013) ("[T]he quality of work and the bonds created through legal employment facilitate desistance from crime . . .").

### 3.  Adequate Deterrence; Protection of the Public; Seriousness of the Offense

A downward variance is still a deterrent to Mr. Hughes.  This is his first ever criminal conviction and will be his first ever prison sentence.  During his imprisonment, the public will be protected as he will be away from the general public, will have limited and monitored visitation, and he will not be allowed to commit further crimes.  Production of child pornography cases are among the most serious cases sentenced by this Court, regardless of the underlying facts.  For this reason, courts across the United States routinely mete out the harshest sentences for these offenses.  Mr. Hughes understands that his case is no different, and he has accepted that his actions will cost him involvement in his siblings' and parents' lives, as well as requiring him to register as a sex offender.  The type of sentence requested in his case would not represent any great windfall to Mr. Hughes; rather, it would reflect that his conduct warrants a lengthy sentence without also disincentivizing the early admissions and acceptance of responsibility shown by Mr. Hughes.

### 4.  Respect for the Law; Provide Just Punishment

A downward variance is just in light of the circumstances of Mr. Hughes's offense.  As his actions have undeniably had an impact on the lives of the victims involved in this case, so too will a lengthy prison sentence dramatically alter the trajectory of Mr. Hughes's remaining years.  When Mr. Hughes is released from prison, his most vital years will be in the rearview mirror—he may not recognize the world that he is released into.  His parents, healthy middle-aged individuals now, will be elderly on his release.  As Mr. Hughes ages into his 30s and 40s, he will come to understand the impulsivity and immaturity that led to the poor decisions that brought him in front of this Court.  Mr. Hughes understands that no amount of time served in prison can undo the pain that he has caused to his victims; however, justice can be tempered with mercy.  Even if the Court shows Mr. Hughes mercy in this case by agreeing to a downward variance, the sentence will still demonstrate

6

that the victimization of minors carries the heaviest penalties available to federal courts, particularly for young, first-time offenders. Under the circumstances of this case, a downward variance is reasonable and fair.

### 5. Need to Avoid Unwarranted Sentencing Disparities

After a balancing of the § 3553(a) factors, a downward variance would not result in an unwarranted disparity. Mr. Hughes did not engage in the type of prolonged sexual contact / abuse that this Court often sees in a 2G2.1 case, nor were there multiple victims. *E.g.*, *United States v. Nathan Wright*, 5:23CR50021-001 (W.D. Ark., June 3, 2024) (600 months); *United States v. Pearson Patrick*, 5:22CR50057-001 (W.D. Ark., Mar. 16, 2023) (396 months). Mr. Hughes's case has a fairly recent and similar comparator case in terms of offense conduct—Kevin Solorzano-Gonzalez. Mr. Solorzano-Gonzalez was 22 years old at sentencing, a trader and member of a child pornography community, and produced child pornography with an individual who was relatively close in age with him (victim: 14–15, defendant: 17–18). However, Mr. Solorzano-Gonzalez was only sentenced to 180 months by this Court most probably because the Government declined to prosecute him as a 2G2.1 offender. *United States v. Kevin Solorzano-Gonzalez*, 3:23CR30006-1 (W.D. Ark., May 17, 2024). Notably, he would have landed in a similar guidelines range to Mr. Hughes had he been prosecuted for his 2G2.1 offense.

The Government's plea-bargaining practices can undermine the ultimate goal of the sentencing guidelines—to avoid disparate sentences for similar crimes. *See United States v. Ringis*, 78 F.Supp.2d 905, 930 (N.D. Iowa, Dec. 16, 199) ("In [*United States v. Jones*, 160 F.3d 473, 483 (8th Cir. 1998)], the Eighth Circuit Court of Appeals found that certain disparities arising from the exercise of prosecutorial discretion in plea bargaining *do* provide an appropriate basis for downward departure . . . .") (emphasis in original). Comparison to the Judiciary Sentencing

Information available for Mr. Hughes's case using a Final Offense Level of 43 produces a median and an average sentence far below the guidelines range at around 360 months. Mr. Hughes submits that these types of sentences are sufficient but not greater than necessary to achieve the goals of sentencing in this case.

CONCLUSION

A downward variance from the guidelines imprisonment range is sufficient but not greater than necessary to achieve the purposes of sentencing. Such a sentence considers the relative seriousness of Mr. Hughes's offense, his personal background and characteristics, and his likelihood of recidivism. WHEREFORE, Mr. Hughes respectfully requests this Court impose a downward variance from the guidelines imprisonment range, and for all other relief to which he may be entitled.

Respectfully submitted,

JAMES B. PIERCE
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:    /s/ *Kevin Lammers*
Kevin Lammers
Assistant Federal Public Defender
112 West Center St., Suite 300
Fayetteville, AR 72701
(479) 442-2306

8

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Devon Still, AUSA; Alma Calderon, U.S. Probation Officer; and I hereby certify that I delivered a copy to the following non-CM/ECF participants: none.

/s/ *Kevin Lammers*
Kevin Lammers
Assistant Federal Public Defender

9